Michael A. Taibi, Esq. SBN 160041
TAIBI & ASSOCIATES, A.P.C.
750 "B" Street, Suite 3300
San Diego, CA 92101
Tel: (619) 354-1798   Fax: (619) 784-3168
Email: matlaw1@ymail.com

Attorney for the Plaintiff ROY MASON

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY MASON | ) CASE NO. '18 CV0098 BEN KSC |
| Plaintiff, | ) |
| | ) |
| vs. | ) COMPLAINT FOR DAMAGES AND |
| | ) INJUNCTIVE RELIEF FOR VIOLATIONS |
| | ) OF AMERICAN'S WITH DISABILITIES |
| TRACY VAN PHAN, INC dba ACE | ) ACT; UNRUH CIVIL RIGHTS ACT; |
| FURNITURE, and DOES 1-10, INCLUSIVE. | ) NEGLIGENCE |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, ROY MASON, (hereinafter referred to as "Plaintiff"), files his causes of action

within this Civil Complaint against Defendant(s), TRACY VAN PHAN, INC. dba ACE

FURNITURE (Herein known as "Defendants") and DOES 1 through 10, Inclusive, and would

show unto the Court the following:

## I. JURISDICTION AND VENUE

1.      This Court has original jurisdiction regarding this matter pursuant to 28 U.S.C.

Section 1331 and 1343(a)(3) and (a)(4) for claims arising under the Americans with Disabilities

act of 1990, 42 USC Section 12101, et seq.

2.    Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same center of operative facts; and, arising out of the same transactions this matter is also brought under California's Unruh Civil Rights Act Civil Code Section 51, and the California Disabled Persons Act, and the Disabled Persons Act, Civil Code Section 54, et seq., which expressly incorporates under common law theories and for injunctive relief

3.    Venue is proper in this court pursuant to 18 U.S.C. Section 139(b) and is founded on the fact that the real property and business location, which is the subject of this action, is located in this District where the Plaintiff's cause(s) of action arose.

4.    All causes of action based on Federal law and those based on State law, as states, arose from a commonality of operative facts.  Plaintiff was denied equal access to Defendants facility, goods, and services in violation of both Federal and State laws or was and/or was injured due to violations of the afore-referenced access laws.  The State causes of action included in Plaintiff's complaint are related to the Federal causes of action as they derive from the same controversy.  Therefore, the issues are best tried in one judicial proceeding.

Plaintiff also brings forth the action as a private Attorney General under State law to enforce important rights of all similarly disabled persons.  Therefore, the Plaintiff acted as a private Attorney General, through his attorney, to enforce the Federal Regulations and applicable California Codes to ensure that Ace is accessible for all disabled persons and not just himself.

## II. PARTIES

5.    Plaintiff alleges that Defendant is, and at all times mentioned, was a business, corporation or franchise organized and existing and/or doing business under the laws of the State of California, TRACY VAN PHAN, INC. dba ACE FURNITURE ("Ace"), located at 3672 El Cajon Bl., San Diego, CA 92104, (herein sometimes known as "property").  Plaintiff alleges that

Defendant is, and at all times was, the owner/operator, lessee or lessor of the facility located at the property.

6.      Plaintiff alleges that DOES 1 through 10 were at all times relevant lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principals and/or representatives of Plaintiff.  Plaintiff is unaware of the true names and capacities of Defendants sued herein, as DOES 1 through 10, inclusive, and therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.  Defendant and DOES 1 through 10 are hereinafter collectively referred to as "Defendants".

7.      Plaintiff alleges that Defendants at all times have been and are relevant to this cause of action, the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, representing partners, subsidiaries, partner companies, joint ventures and/or divisions of the remaining Defendants and were acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and therefore alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining defendants.

8.      Plaintiff is a qualified individual with a disability as provided by the Americans with Disabilities Act of 1990, 42 USC Section 12102, and the California Unruh Civil rights Act, Sections 51, et seq. and 52, et seq., the Disabled Persons Act, Sections 54, et seq., Govt. Code, Sections 12926, and other statutory measures that refer to the protection of the rights of "physically disabled persons".  Plaintiff visited the public accommodations owned and operated

by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, or accommodations operated and/or owned by Defendants.

### III. FACTS

9.     Plaintiff alleges that the subject facility has been newly constructed and/or underwent remodeling, repairs, or alterations since 1992, and that Defendants have failed to comply with California access standards which applied at the time of each such new construction and/or alteration or failed to maintain accessible features in operable working condition.

10.    Plaintiff is mobility impaired and uses a wheelchair.  He has been classified as having a physical impairment, as required by 42 USC Section 12102(2)(A), and requires a wheel chair for mobility and to gain access to public establishments.

11.    On or about August 22, 2017, Plaintiff was denied full and equal access to Ace owned and/or operated by the Defendants because the property was inaccessible to individuals belonging to the disabled community who use wheel chairs for mobility. Full accessibility was denied due to a lack of access to the premises.  Ace is a business open to the public, a place of public accommodation, and a business establish open to the public.

When Plaintiff attempted to gain access to the restrooms located inside of the business he was not able to do so.  Plaintiff found no designated or alternative restroom available for disabled person(s) confined to a wheelchair at the time of his visit to Ace.

Plaintiff states that there was no proper signage identifying the restroom for a disabled person, improper grab bars surrounding the water closet (toilet) making it extremely difficult for him to use as he was unable to support himself, the water pipes under the sink were exposed and not covered, and he was unable to properly access the door as it had a round knob that twists rather than a "push down" type handle for disabled persons.

Plaintiff was unable to gain full use of the restroom and, therefore, was barred from full access to the facilities. He was unable to enjoy the facilities to which a disabled person is entitled.

Plaintiff desires to return and patronize Ace but is barred from fully accessing the premises until Defendant(s) cure the violations. Plaintiff occasionally patronizes business in the immediate area and he would like to return and patronize Ace it in the future.

Based on the fact that the restroom facilities do not exist for disabled persons, an ADA specialist was retained by Plaintiff's attorney who determined that the restroom is indeed not ADA accessible as no restroom facilities are designated for disabled persons nor is there an alternative restroom that can accommodate a disabled person.

Defendants are required to modify any discriminatory policies, practices and procedures to avoid discriminating against people with disabilities, including Plaintiff.

12.     Defendants' discrimination caused Plaintiff to suffer harmful injuries including difficulty, discomfort and embarrassment.

13.     The harmful conduct of Defendants has and will cause great and irreparable injury to Plaintiff in that Defendants' failure to provide full and equal access to individuals with disabilities, including those to Plaintiff, denies Plaintiff access the facilities in Ace and, therefore, is in violation of the ADA Accessibility Guidelines and/or California Title 24 Building Code requirements, and/or other applicable Codes, statutes and/or other regulations.

14.     Plaintiff alleges that Defendants have continued to operate a business open to the public which is inaccessible to him and other individuals with disabilities. Pursuant to 42 USC Section 12188(a), Defendants are required to remove barriers to their existing facility. Plaintiff further alleges that removal of the barriers described in this complaint is readily achievable and

can be removed with minimal difficulty or expense. Or, equivalent facilities may be provided without much difficulty or expense. Defendants are also required to modify any discriminatory policies, practices and procedures to avoid discriminating against people with disabilities, including Plaintiff.

Plaintiff's attorney retained the services of WILLIAM CARTER an ADA Specialist, to inspect the property and write a report of violations. This report has been attached as Exhibit "A" to this complaint.

15. Plaintiff alleges that the discriminatory policies, practices and procedures, precluding him and other disabled persons from full access of the public accommodations will continue to exist for any future visits, which will result in future discrimination of Plaintiff and other disabled persons in violation of the Americans with Disabilities Act.

### IV.  FIRST CLAIM FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT 42 USC SECTION 12101, et seq.

16. Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 15, inclusive as set forth herein.

17. Plaintiff was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased and/or operated by Defendants, in violation of 42 USC Section 12182(a). Therefore, Plaintiff was subjected to discrimination and is entitled to injunctive relief pursuant to 42 USC Section 12188 as a result of the actions or inaction of Defendants.

18. Among other remedies, Plaintiff seeks an injunctive order requiring compliance with state and federal access laws for all access violations that exist at the property, requiring

removal of architectural barriers and modification of policies, practices, and procedures, and other relief as the Court may deem proper.

19.     Plaintiff also seeks any other order that will redress the discrimination to which he has been subjected, is being subjected and/or will be subjected.


## V.  SECOND CLAIM FOR VIOLATION
## OF CALIFORNIA CIVIL CODE

20.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraph 1 through 19, inclusive as set forth herein.

21.     Plaintiff alleges that based on the facts placed in this complaint, Defendants did, and continues to, discriminate against Plaintiff and persons similarly situated by denying disabled persons full and equal access to the facility to purchase goods, services, facilities, privileges, advantages or accommodations within a public accommodation, in violation of California Civil Code Sections 51 and 54, et seq.

22.     Plaintiff alleges that Defendants' actions constitute a violation of Plaintiff's rights under California Civil Code Sections 51 and 54, et seq., and therefore, entitling him to damages under California Civil Code Section 54.3 for each offense.  Plaintiff suffered difficulty, discomfort and embarrassment because of his denial to full and equal access as stated above. The amount of damages suffered by plaintiff is not yet determined.  When the amount is determined, Plaintiff will ask the Court for leave to amend this complaint to reflect this amount. Plaintiff is also entitled to attorneys' fees and costs.

23.     The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California civil Code Sections 51 and 54, et seq., therefore entitling Plaintiff to damages suffered by him under civil code section 52 for each offense.  The amount of damages suffered

by plaintiff has not yet been determined.  When the amount has been determined, Plaintiff will ask the court for leave to amend this complaint to reflect this amount.  In addition, the Plaintiff is entitled to attorneys' fees and costs.

24.     The actions of Defendants are in violation of the California Civil Code Sections 51, et seq. as they were willfully, deliberate and reckless in nature for the rights of disabled persons including Plaintiff.  Therefore, Plaintiff is entitled to punitive and exemplary damages or treble damages pursuant to California Civil Code Sections 52 and 54.3, et seq. and under common law principles.

25.     Plaintiff seeks all of the remedies available to him under Civil Code Sections 51, 52, et seq., 54, 54.1, 54.2, 54.3, and any other Civil code sections that provide remedies for the discrimination suffered by Plaintiff, including damages and attorneys' fees

## VI.  THIRD CLAIM FOR NEGLIGENCE PER SE

26.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 25, inclusive as set forth herein.

27.     At all times relevant herein, there was in effect the Americans with Disabilities Act, California Civil Code Sections 51 and 54, et seq., all of which require that public accommodations and facilities provide services to people with disabilities that are equal and not inferior to the services provided to patrons who are not physically disabled.

28.     Defendants owe Plaintiff a mandatory duty to provide him full and equal access to accommodations, advantages, facilities, privileges and services of all business establishments. Plaintiff is a member of the class of individuals who are protected under these statutes.

29.     Defendants' acts or omissions alleged by Plaintiff are a violation of statutory requirements including, the Americans with Disabilities Act, California Civil Code Sections 51 and 54, et seq. and public policy, therefore constituting negligence per se.

30.     As a proximate result of the actions or inactions of Defendants, Plaintiff has suffered the harms that these statutes are designed to prevent.

31.     Plaintiff requests special and general damages as well as statutory damages according to proof, as described herein.

## VII.  FOURTH CLAIM FOR NEGLIGENCE

32.     Plaintiff alleges and incorporates by reference each allegation stated in paragraphs 1 through 31, inclusive as set forth herein.

33.     Defendants have a duty to exercise ordinary and reasonable care as set forth above.

34.     Defendants have failed to exercise ordinary and reasonable care as set forth above.

35.     As an actual and proximate result of Defendants' failure to exercise ordinary and reasonable care, Plaintiff suffered general and special damages.

36.     As actual controversy exists, Plaintiff alleges that Defendants' property is in violation of the disabled access laws of the state of California including Civil Code Sections 51, 52, and 54, et seq., and Title III of the Americans with Disabilities Act and Accessibility Regulations.

## VIII.  FIFTH CLAIM FOR DECLATORY RELIEF

37.     Plaintiff alleges and incorporates by reference each allegation in paragraphs 1-36, inclusive, as though set forth fully herein.

38.     A controversy exists as Plaintiff alleges that Defendants' premises are in violation of the disabled access laws of the state of California including, but not limited to, Civil code Sections 51, 52, and 54 et seq., and Title III of the Americans with Disabilities Act and accessibility Regulations.

### IX.  SIXTH CLAIM FOR INJUNCTIVE RELIEF

39.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 38, inclusive, as set forth herein.

40.     Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural barriers at Defendants' public accommodation, and/or to modify their policies, practices, and procedures regarding accommodating people with disabilities, Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants.

41.     Plaintiff seeks injunctive relief to redress his injuries.

### JURY TRIAL DEMAND

Plaintiff hereby requests a Jury Trial in this matter.

### CONCLUSION

WHEREFORE, Plaintiff prays for a judgment against the Defendants, TRAN VAN PHAN, INC. dba ACE FURNITURE, and DOES 1 through 10.

1.     An order enjoining Defendants from violating disabled access laws of the United States and of the State of California.

2.     An order that the Court declare the respective rights and duties of Plaintiff and Defendant(s) as to the removal of architectural barriers at defendants' public accommodation and/or as to the modification of discriminatory policies, practices, and procedures.

3. Injunctive relief, compelling Defendant(s) to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.

4. An order awarding plaintiff actual, special and/or statutory damages for violations of his civil rights and for restitution including, but not limited to $4,000.00 in damages for each and every offense in violation of Civil Code section 51, and/or $1,000.00 for each offense in violation of Civil Code Section 54, et seq. and for each occasion upon which Plaintiff was denied or deterred from availing himself of Defendant's facilities, good and services.

5. An order awarding punitive and exemplary damages according to proof.

6. An order awarding up to three times the amount of actual damages pursuant to the Unruh Civil Rights Act and the Disabled Persons Act.

7. An order awarding Plaintiff reasonable attorney fees and costs.

8. An order awarding such other relief as the Court deems proper.

Dated: 01/12/2018

MICHAEL A. TAIBI, Esq.
Attorney for Plaintiff
ROY MASON

EXHIBIT "A"



**DAOLIAM INTERNATIONAL**

# DAOLIAM INTERNATIONAL

## AMERICANS WITH DISABILITIES ACT (ADA)
## ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

This survey report addresses compliance with ADA Title III readily achievable accessibility guidelines.  The information contained herein is an interpretation of the combined codes, regulations and laws of both, (State and Federal), California Title 24 and ADAAG, requirements for complying with disabled accessibility guidelines.

The definition of a place of public accommodation is covered under Title III.  There are 12 categories of facilities represented in the statutory definition of public accommodation in section 301(7) of the ADA.  The facility surveyed falls under one of the following Categories: Restaurants, Bars, Hotels, Lodges, Theaters, Shopping Centers, Malls, Retail Stores, Museums, Libraries, Parks, Private Schools, Day Care Centers, and Other Similar Places of Public Accommodations.

ADAAG REPORT DATE:   DECEMBER 23, 2017

ADAAG SURVEY OF:       ACE FURNITURE
                       3672 EL CAON BLVD
                       SAN DIEGO, CA 92104


ADAAG SURVEY INVESTIGATION REPORT PERFORMED BY:

WILLIAM CARTER, D.A.C.E.         _____

                                 Signature

------------------------------------------------------------------------

REPORT ISSUED TO:     MICHAEL A TAIBI, ESQ, SBN:160041
                      LAW OFFICES OF MICHAEL A TAIBI, ESQ
                      14261 DANIELSON STREET, STE. A
                      POWAY, CA 92064
                      Telephone:    (858) 883-2712

**DAOLIAM INTERNATIONAL**

## TABLE OF CONTENTS

I.  Introduction..................................................................................................3
    A.  Daoliam International

II.  Scope of Survey ..........................................................................................4
    A.  Facility – Existing Facility
    B.  Safe Harbor – Element by Element
    C.  1991 vs 2010 ADA & Title 24 Standards

III.  Methodology................................................................................................8

IV  Copyright Act of 1976...................................................................................9

V  Total Number of Violations...........................................................................10

VI  Report Findings:
    A.    Accessible Entry
            1.  Parking Areas...............................................................12
            2.  Walks, Curbs & Ramps.................................................12
            3.  Entrances, Corridors & Stairs.......................................12
    B.    Access to Goods & Services
            1.  Dining, Banquet and Bar Facilities.....................................13
    C.    Access to Restrooms
            1.  Public Restrooms.................................................................14
    D.    Any Other Measures Necessary
            1.  Public Telephones & Water Fountains.............................36
            2.  Hazards & Emergency Procedures...................…...............36
            3.  Controls….................................................................36
            4.  Elevators................................................................36

VII  Prior History of ADA Complaints or Litigation............................................37

VIII  List of Business/Tenants within the facility deemed to be in Non Compliance.......37

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

## I.      INTRODUCTION

DAOLIAM INTERNATIONAL

Daoliam International's, "Mission" under the Americans with Disabilities Act (ADA) Accessibility Survey For A Title III Entity, is to provide project compliance architectural and management consulting services to individual businesses and governmental agencies interested in bringing about compliance with the Americans with Disabilities Act (ADA) and Federal Laws, to build a partnership between the physically challenged disabled persons and the business communities, and to promote a full and unrestricted participation in society for persons with disabilities. Daoliam International is able to accomplish the above through various mediums such as Education, Mediation and Litigation.

Employees and or Agents of Daoliam International have provided ADA project compliance, architectural and management consulting services to the following, but not limited to, entities:  San Diego International Airport, San Diego Port Authority, HMS Host, General Dynamics, Home Savings of America, Wells Fargo Bank, Greyhound Bus Station, Marriott Hotel, Brown Field, Montgomery Field, Restaurants, Bars, Hospitals, Medical Facilities, Retail Department Stores, Commercial Office Buildings, etc.

In addition, Daoliam International's President, William Carter, has Experience and/or Degrees/Licenses in the following fields:  Mechanical Engineering, Civil Engineering, Drafting Engineering, Construction, Demolition, Retro-Fit Bridges, Joint Seal Bridges & Buildings, Energy Conservation Analysis, Design of ADA Spec Homes, Manufactured Homes, Import/Export various Goods/Services and Law.

William Carter, Disabled Accessibility Compliance Expert, has performed thousands of ADA Surveys/Reports in the 8th and 9th Circuit.  William's expertise in the interpretation of the legal and technical provisions of disabled accessibility standards is regularly utilized by law firms for the resolution of complaints, alleged issues of non-compliance and lawsuits. He has provided expert opinion to help solve 100's of cases.

The information contained herein represents Daoliam International's interpretation of the combined codes and laws regulating both State of California and the Federal requirements for complying with disabled accessibility guidelines.  Though Daoliam International has made a good faith effort to provide you with the latest and most accurate information available, the information contained in this report is subject to change without notice and does not represent a commitment on the part of Daoliam International as the field of disabled accessibility remains to be a dynamic and constantly changing domain, changes are periodically made in this field. Final verification and approval for each project must be secured from respective regulatory authorities.

DAOLIAM INTERNATIONAL

II. SCOPE OF SURVEY
================================================================

================================================================
A. EXISTING FACILITY

This facility is a automobile sales center.  Section 42 USC 12818(7)(a-g) provides that a automobile sales center or other place which a place which sells automobiles is a public accommodation.  This is a survey of the automobile sales center, restrooms and parking lot.

This facility appears to have been built prior to the enactment of the ADA (1992 Effective Date.  This building appears not to be an altered existing facility as defined under the ADA.  There are no visible exterior or interior tenant improvements, relating to the facility.

Under Department of Justice (DOJ) Title III, Technical Manual III-4.4200, 28 CFR 36.201; 28 CFR 36.203; 28 CFR 36.304; 28 CFR 36.305, "The ADA establishes different standards for existing facilities, altered facilities and new construction.   In existing facilities, where retrofitting may be expensive, the requirement to provide access is less stringent than it is in new construction and alterations, where accessibility can be incorporated in the initial stages of design and construction without a significant increase in cost."

Since January 26, 1992, Architectural barriers must be removed in a public area of an existing facility when said removal is "**readily achievable**", when it is easily accomplished and can be carried out or performed without much difficulty or expense.

The Department of Justice regulation contains a list of 21 examples of modifications that may be readily achievable:

1.  Installing ramps; (3.6.1)

2.  Making curb cuts in sidewalks and entrances; (3.6.2)

3.  Repositioning shelves; (3.6.3)

4.  Rearranging tables, chairs, vending machines, display racks, and other furniture;

    (3.6.4)

5.  Repositioning telephones; (3.6.5)

6.  Adding raised markings on elevator control buttons; (3.6.6)

7.  Installing flashing alarm lights; (3.6.7)

8.  Widening doors; (3.6.8)

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

4

9.  Installing offset hinges to widen doorways; (3.6.9)

10. Eliminating a turnstile or providing an alternative accessible path; (3.6.10)

11.  Installing accessible door hardware; (3.6.11)

12.  Installing grab bars in toilet stalls; (3.6.12)

13.  Rearranging toilet partitions to increase maneuvering space; (3.6.13)

14.  Insulating lavatory pipes under sinks to prevent burns; (3.6.14)

15.  Installing a raised toilet seat; (3.6.15)

16.  Installing a full-length bathroom mirror; (3.6.16)

17.  Repositioning the paper towel dispenser in a bathroom; (3.6.17)

18.  Creating designated accessible parking spaces; (3.6.18)

19.  Installing an accessible paper cup dispenser at an existing

    inaccessible water fountain; (3.6.19)

20.  Removing high pile, low density carpeting; or (3.6.20)

21.  Installing vehicle hand controls. (3.6.21)

==================================================================

==================================================================

## B. Existing Facilities – Part B

Element-by-Element Safe Harbor

If your business facility was built or altered in the past 20 years in compliance with the 1991 Standards, or you removed barriers to specific elements in compliance with those Standards, you do not have to make further modifications to those elements—even if the new standards have different requirements for them—to comply with the 2010 Standards. This provision is applied on an element-by-element basis and is referred to as the "safe harbor."  The following examples illustrate how the safe harbor applies:

1. The 2010 Standards lower the mounting height for light switches and thermostats from 54 inches to 48 inches.  If your light switches are already installed at 54 inches in compliance with the 1991 Standards, you are not required to lower them to 48 inches.

2. The 1991 Standards require one van accessible space for every eight accessible spaces.  The 2010 Standards require one van accessible space for every six accessible spaces.  If you have complied with the 1991 Standards, you are not required to add additional van accessible spaces to meet the 2010 Standards.

3. The 2010 Standards contain new requirements for the input, numeric, and function keys .g. "enter," "clear," and "correct") on automatic teller machine (ATM) keypads.  If an existing ATM complies with the 1991 Standards, no further modifications are required to the keypad.

If a business chooses to alter elements that were in compliance with the 1991 Standards, the safe harbor no longer applies to those elements.  For example, if you restripe your parking lot, which is considered an alteration, you will now have to meet the ratio of van accessible spaces in the 2010 Standards.  Similarly, if you relocate a fixed ATM, which is considered an alteration, you will now have to meet the keypad requirements in the 2010 Standards.

The revised ADA rules and the 2010 Standards contain new requirements for elements in existing facilities that were not addressed in the original 1991 Standards.  These include recreation facilities such as swimming pools, play areas, exercise machines, miniature golf facilities, and bowling alleys.  Because these elements were not included in the 1991 Standards, they are not subject to the safe harbor.  Therefore, on or after March 15, 2012, public accommodations must remove architectural barriers to elements subject to the new requirements in the 2010 Standards when it is readily achievable to do so.  For example, a hotel must determine whether it is readily achievable to make its swimming pool accessible to people with mobility disabilities by installing a lift or a ramp as specified in the 2010 Standards

**DAOLIAM INTERNATIONAL**

COMPLIANCE DATES UPDATED
========================================================================

========================================================================

Compliance Dates and Applicable Standards for
Readily Achievable Barrier Removal, New Construction, and Alterations

| Compliance Date | Applicable Standard |
|---|---|
| Until March 15, 2012 | 1991 Standards or 2010 Standards |
| On or After March 15, 2012 | 2010 Standards |

Priorities for Barrier Removal

Understanding how customers arrive at and move through your business will go a long way in identifying existing barriers and setting priorities for their removal. Do people arrive on foot, by car, or by public transportation? Do you provide parking? How do customers enter and move about your business? The ADA regulations recommend the following priorities for barrier removal:

- ☐ Providing access to your business from public sidewalks, parking areas, and public transportation;
- ☐ Providing access to the goods and services your business offers;
- ☐ Providing access to public restrooms; and
- ☐ Removing barriers to other amenities offered to the public, such as drinking fountains.

## III. Methodology
=======================================================================

=======================================================================

This ADA survey uses the Methodology employed by the Americans With Disabilities Act (ADA) Accessibility Guidelines for Building and Facilities (ADAAG), part 36 Standards for Accessible Design. An additional reference is Title III Non-Discrimination on the basis of Disability by the Public Accommodations and Commercial Facilities (ADA Handbook) and the Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities.

1.  Americans With Disabilities Act (ADA) Accessibility Guidelines for Building and Facilities ADAAG, part 36 Standards for Accessible Design;

2.  Americans With Disabilities Act, ADA Guide for Small Business, U.S. Small Business Administration Office of Entrepreneurial Development US Department of Justice Civil Rights Division;

3.  Title III Non-Discrimination On The Basis of Disability By Public Accommodations and In Commercial Facilities (ADA Handbook) and the Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities;

4.  The Legislative history of The Americans with Disabilities Act;

5.  The Americans with Disabilities Act Compliance Manual;

6.  Legal Rights of Persons with Disabilities: An Analysis of Federal Law;

7.  California Disabled Accessibility Guidebook 2000;

8.  California Title XXIV;

9.  The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series.

10. Accessible Rights-Of-Way; A Design Guide;

11. The Americans with Disabilities Act Title III Technical Assistance Manual;

12. California Accessibility Reference Manual 2nd Edition

13. California Accessibility Reference Manual 4th Edition

**DAOLIAM INTERNATIONAL**

IV   COPYRIGHT

Copyright Act of (1976)
Copyright Act (2001)

William Carter
DAOLIAM INTERNATIONAL
P. O. BOX 82765
SAN DIEGO, CA 92138-2765

All rights reserved.  As stated in the Copyright Act of 1976, no part of this document may be reproduced or distributed without the prior written permission of DAOLIAM INTERNATIONAL.

The materials for this Americans with Disabilities Accessibility Guideline (ADAAG) report were developed by DAOLIAM INTERNATIONAL. These materials may be reproduced for educational or training events provided by DAOLIAM INTERNATIONAL for the promotion of the Americans with Disabilities Act and Compliance of said act.

This report contains the professional opinions and ideas of its authors and is designed to provide useful advice to businesses interested in removing barriers that may interfere with the full inclusion of persons with disabilities.

Any Americans with Disabilities Act information disseminated on behalf of DAOLIAM INTERNATIONAL by way of training, seminars, written materials and individual consultations, is obtained from the US Department of Labor & the US Department of Justice, and sources are deemed reliable.  There is no reason to doubt its accuracy, but it is not guaranteed, and it is recommended that legal counsel with experience in the application of the ADA be consulted for specific circumstances.

Duplication and distribution of this material is strictly prohibited.

DAOLIAM INTERNATIONAL

## V. NO. VIOLATIONS

### TOTAL NUMBER OF VIOLATIONS

Threshold – Change in level Greater than ½" – Ramp Required
    (CA Title 1124B.2) (ADA 4.5.2)

Wheelchair – Access to Each Type of Functional Activity – Raised/Sunken Areas
    (CA Title 24 1104B.5.3) (ADA 5.4)

Access - Restroom
    (CA Title 24 1105B.3.2)

Bathroom – Proper Directional Signage to Accessible Restroom
    (CA Title 24 1117B.5.8.1.2)

Bathroom – International Symbol of Accessibility at Accessible Restroom
    (ADA 4.30.6) (CA Title 24 1117B.5.7)

Bathroom – International Symbol of Accessibility - Pictogram Min 6" High
    (ADA 4.30.6) (CA Title 24 1117B.5.7)

Bathroom – International Symbol of Accessibility – Verbal Description Below
    (ADAAG 4.30.4 & CA Title 24 1117B.5.5.2)

Raised Braille Characters - (Restroom Wall Signage)
    (ADAAG 4.30.4 & CA Title 24 1117B.5.6.1 & .2)

Wall Mount Signage (Latch Side of Door)
    (ADAAG 4.1.2(7)(d) and CA Title 24 1117B.5.1.1 & .5.6.3)

Wall Mount Signage (60 inches from the floor)
    (ADAAG 4.30.6 & CA Title 24 1117B.5.9)

Door Mount Signage (Men's & Women's)
    (CA Title 24 1115B.5)

Door Signage (Color Distinctively Contrast w/Door Color)
    (CA Title 24 1115B.5)

Entry Door - Minimum Clear Width
    (ADAAG 4.13.5 & CA Title 24 1133B.2.2 & 1003.3.1a)

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY                    10

Grab Bar – Parallel Mounting Height
(1991 ADAAG 4.17.6, 2010 ADA 4.17.3) (1991 CA T24 1115B.8.1, 2010 CA T24 1115B.4.1.3.3.2)

Grab Bar – Side Proper Extension Beyond Water Closet (24 inches)
(1991 ADAAG 4.17.6, 2010 ADA 4.17.3) (1991 CA T24 1115B.8.1 2010 CA T24 1115B.4.1.3.3.1)

Grab Bar  - (Side Min 42 inch Long)
(1991 ADAAG 4.14.6, 2010 ADA 4.17.3, ADA 4.22.4) (1991 CA T24 1115B.8.1 2010 CA T24 1115B.4.1.3.3.1)

Grab Bar – (Side Attached Max 12 inches from Rear Wall)
(1991 ADAAG 4.17.6, 2010 ADA 4.17.3, 2010 ADA 4.22.4) (2010 CA T24 1115B.4.1.3.3.1)

Grab Bar – (Side Forward Ends Located/Extends a Min 54 inches from Back Wall)
(1991 ADAAG 4.17.7, 2010 ADA 4.17.3) (2010 CA T24 1115B.4.1.3.3.1)

Grab Bar – (Rear Grab Bar Length 36" Min)
(1991 ADAAG 4.17.6, 2010 ADA 4.17.3) (1991 CA T24 1115B.8.1, 2010CA T24 1115B.4.1.3.3.2)

Grab Bar – (Rear Grab Bar Attached to Corner Wall Length 6" Min)
(1991 ADAAG 4.17.6, 2010 ADA 4.17.3) (1991 CA T24 1115B.8.1, 2010 CA T24 1115B.4.1.3.3.2)

Hardware – Opening Door Knobs
(ADAAG 4.13.9 & CA Title 24 1133B.2.5.1)

Drain & Hot Water Pipes – Insulated or Covered
(CA T24 1117B.9.2 & ADAAG 4.24.6)

**DAOLIAM INTERNATIONAL**

VI.   REPORT OF FINDINGS
=========================================================================
A. Accessible Entry
B. Access to Goods and Services
C. Access to Restrooms
D. Any Other Measure Necessary
=========================================================================

## FACILITY EVALUATION

The initial step in achieving compliance with Title III is to evaluate a facility and it's operations. All areas of the facility should be examined and evaluated as to accessibility.  This ADA Survey Report examines the following four principle elements:

1. ACCESSIBLE ENTRY;
2. ACCESS TO GOODS AND SERVICES;
3. ACCESS TO RESTROOMS;
4. ANY OTHER MEASURES NECESSARY.

## A.  ACCESSIBLE ENTRY

Accessible Entry: People with disabilities should be able to arrive on the site, approach the building, and enter the building as freely as everyone else.  At least one path of travel should be safe and accessible for everyone, including people with disabilities.

ADAAG 4.6.2 Location.  Accessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance. In parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility.  For a building with multiple accessible entrances with adjacent parking, accessible parking spaces shall be dispersed and located closest to the accessible entrances.

N/A
A(2).  WALKS, CURBS & RAMPS

N/A

DAOLIAM INTERNATIONAL

A(3)   ENTRANCES, CORRIDORS & STAIRS

THRESHOLDS

\*   AREA OF CONCERN
        Does the accessible primary public entrance have less than a ½' change in level from the top of the threshold or the doorway to the floor or landing?

        ADAAG 4.1.3.8 & CA Title 24 1133B.2.4.1
                Floor(s) or landing(s) are not more that ½" lower than the top of the threshold of the doorway.



        FINDINGS OF INVESTIGATION
                Here, the floor or landing is 4" lower than the top of the threshold of the doorway.

        CONCLUSION – VIOLATION
                Since, the floor or landing is 4" lower than the top of the threshold of the doorway, they are in violation.

B.      ACCESS TO GOODS & SERVICES

        DINING, BANQUET AND BAR FACILITIES

        N/A

DAOLIAM INTERNATIONAL

C.    ACCESS TO RESTROOMS

C(1).  Public Restrooms

IDENTIFICATION SYMBOLS (for Sanitary Facilities)

Special Note: Sanitary facilities are required to provide (2) Two separate types of signage; (1) one type located on the doorway to the facility, and another type mounted on the wall adjacent to the latch side of the door.

Special Note:   Where there is no wall space on the latch side, including at double leaf doors, signs shall be placed on the nearest adjacent wall, preferably on the right.  California Title 24 Section 1117B.5.9 and ADAAG Section 4.30.6

ADAAG 4.1.3(11) & CA Title 24 1115B.1 (Restroom Facilities General Requirement)
When sanitary facilities are provided that serve buildings, facilities or portions of buildings or facilities that are required to be accessible, then each such sanitary facility shall be accessible to persons with disabilities.

CA Title 24 1115B.2 Separate Facilities
Where separate facilities are provided for non-disabled persons of each sex, separate facilities shall be provided for persons with disabilities of each sex also.  Where unisex facilities are provided for persons without disabilities, at least one unisex facility shall be provided for persons with disabilities within close proximity to the non-accessible facility.


*    AREA OF CONCERN
Does the bathroom/restroom have the proper signage, which provides direction to or information about access to its facilities?

ADAAG Building Signage.  Signs which designate permanent rooms and spaces, shall comply with 4.30.1, 4.30.4, 4.30.5, and 4.30.6.  Other signs which provide direction to, or information about, functional spaces of the building shall comply with 4.30.1, 4.30.2, 4.30.3, and 4.30.5.  Elements and spaces of accessible facilities which shall be identified by the International Symbol of Accessibility and which shall comply with 4.30.7 are:
(a)    Parking Spaces designated as reserved for individuals with disabilities;
(b)    Accessible Passenger Loading Zones;
(c)    Accessible Entrances when not all are accessible, (inaccessible entrances shall have directional signage to indicate the route to the nearest accessible entrance);
(d)    Accessible Toilet and Bathing Facilities when not all are accessible.

CA TITLE 24 SECTION 1117B.5.1.1.1 & .5.6.3
The international symbol of accessibility is installed on the wall adjacent to the latch side of the door.  The border dimension of this pictogram shall be a minimum of 6 inches in height.

AMERICANS WITH DISABILITIES ACT (ADA)                    14
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

FINDINGS OF INVESTIGATION
Here, there are NO such signs anywhere.

CONCLUSION – VIOLATION
By NOT having any signage in the building which provided direction to or information about access to any facilities which could be used by persons with disabilities, they are in violation

\* AREA OF CONCERN
Are the restroom international symbol of accessibility signs centered on the wall correctly?

ADAAG 4.30.6 & California Title 24 Section 1117B.5.9 Mounting Location and Height. Where permanent identification is provided for rooms and spaces, signs shall be insulated on the wall adjacent to the latch side of the door.  Where there is no wall space to the latch side of the door, including at double leaf doors, signs shall be placed on the nearest adjacent wall. Mounting height shall be 60 inches (125 mm) above the finish floor to the centerline of the sign.  Mounting location for such signage shall be so that a person may approach within 3 inches (76 mm) of signage without encountering protruding objects or standing within the swing of a door.

DAOLIAM INTERNATIONAL





📖    Sanitary facilities are required to provide two separate types of signage; one type located on the doorway to the facility, and another type mounted on the wall adjacent to the latch side of the door.

📖    Note: Wall signs need only use raised letters and Braille – see below

FINDINGS OF INVESTIGATION
There are NO signs centered on the wall that are 60 inched from the floor that meet this requirement.

CONCLUSION – VIOLATION
Since there are NO such signs on the wall that are 60 inches from the floor that meet the above requirement, they are in violation of the above mentioned section.

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

16

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
        Does the facility have wall mounted signage located on the latch side of the
door?

        ADAAG 4.1.2(7)(d) & CA Title 24 1117B.5.1.1 & .5.6.3 (Wall Mount Signage)
        The international symbol of accessibility is installed on the wall adjacent to the
latch side of the door.
        *NOTE: Where there is no wall space on the latch side, including at double leaf
doors, signs shall be placed on the nearest adjacent wall, preferably on the right.  ADAAG
4.30.6 & CA Title 24 1117B.5.9.*

        FINDINGS OF INVESTIGATION
        There are NO signs on the walls of this facility.

        CONCLUSION - VIOLATION
        Since there are NO signs on the walls, they are in violation.

DAOLIAM INTERNATIONAL

\* AREA OF CONCERN
  Is the door mounted signage proper and correct?

 CA Title 24 1115B.5 (Door Mount Signage)
  Men's – Equilateral triangle ¼ inch thick with edges 12 inch long and a vertex pointing upward.
  Women's – 12 inch diameter circle ¼ inch thick.

 FINDINGS OF INVESTIGATION
  Here, the signs do not meet the above requirement, because there are no signs.

 CONCLUSION – VIOLATION
  Since there are no signs, they are in violation.


\* AREA OF CONCERN
  Does the color of the current bathroom signage distinctively contrast with the color of the door?

 CA Title 24 1115B.5 (Color Distinctively Contrast w/Door Color)
  The color and contrast of the sign distinctively contrasts with the color and contrast of the door.

 FINDINGS OF INVESTIGATION
  Here, the color of the door does NOT distinctively contrast with the color of the sign, because there is no sign.

 CONCLUSION - VIOLATION
  Since there is no sign, they are in violation.

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
          Is there a sign on the latch side of the door that is accompanied by Grade 2
Braille for persons with disabilities, sight impaired persons.

          (CA Title 24 1117B.5.5.1) (ADA 4.30.4) (Raised Braille- Bathroom Signage)
          Raised and Braille Characters and pictorial Symbol Signs. (Pictograms):  Letters
and numerals shall be raised 1/32 inches, upper case, sans serif or simple serif type and shall
be accompanied with Grade 2 Braille.  Raised characters shall be at least 5/8 inches (16 mm)
high, but no higher than 2 inches (50 mm).

          FINDINGS OF INVESTIGATION
          Here, there are NO signs with the above referenced characteristics.

          CONCLUSION – VIOLATION
          Since there are NO signs at this location with the proper characteristics listed
above, they are in violation.

**DAOLIAM INTERNATIONAL**

## LAVATORIES

\*       AREA OF CONCERN
        What is the minimum clear width of a restroom entry door?

        ADAAG 4.13.5 & CA Title 24 1133B.2.2 & 1003.3.1a  (Door Clear Opening Width)
        The door must have a minimum clear opening width of 32 inches.



FINDING OF INVESTIGATION
        Here, the clear width is 25 inches.

CONCLUSION – VIOLATION
        Since the door clear width is only 25 inches, they are in violation.

DAOLIAM INTERNATIONAL

## GRAB BARS

\*       AREA OF CONCERN
          What is the correct grab bar mounting height?

(ADA 4.17.3, ADA 4.22.4) (CA T24 1115B.4.1.3.3.2) GRAB BAR MOUNTING HEIGHT
          Grab bars are mounted at 33 inches to center of bar above and parallel to floor.
(For tank type toilets, 36 inches may be allowed if tank obstructs placement of back bar).



SIDE VIEW                          FRONT VIEW

## WALL-MOUNTED WATER CLOSETS

X=52" MINIMUM WHEN WATER CLOSETS ARE IN STALLS
X=54" MINIMUM WHEN WATER CLOSETS ARE NOT IN STALLS
(SUCH AS IN SINGLE ACCOMMODATION ROOMS OR
OPEN TOILETING SITUATIONS)



SIDE VIEW                          FRONT VIEW

## FLOOR-MOUNTED WATER CLOSETS



## GRAB BAR DIMENSIONS

AMERICANS WITH DISABILITIES ACT (ADA)                    21
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

FINDINGS OF INVESTIGATION
    Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
    Since there are no grab bars mounted in the restroom, they are in violation.

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
        Are the side grab bars a minimum length of 42 inches?

(ADA 4.17.3, ADA 4.22.4) (CA T24 1115B.4.1.3.3.1) (Side-Grab Bar 42 inch Length)
        Side Grab bar is a minimum 42 inches long.



**WALL-MOUNTED WATER CLOSETS**

X=52" MINIMUM WHEN WATER CLOSETS ARE IN STALLS
X=54" MINIMUM WHEN WATER CLOSETS ARE NOT IN STALLS
(SUCH AS IN SINGLE ACCOMMODATION ROOMS OR
OPEN TOILETING SITUATIONS)



**FLOOR-MOUNTED WATER CLOSETS**



**GRAB BAR DIMENSIONS**

AMERICANS WITH DISABILITIES ACT (ADA)                    23
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

FINDINGS OF INVESTIGATION
    Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
    Since there are no grab bars mounted in the restroom, they are in violation.

DAOLIAM INTERNATIONAL

\*        AREA OF CONCERN
            Are the side grab bars attached at a maximum of 12 inches from the rear wall?

        (ADA 4.17.3, ADA 4.22.4) (CA T24 1115B.4.1.3.3.1) (Side Grab Bar attached a Max of 12 inches from rear wall)
            The side grab bar is attached a maximum of 12 inches from the rear wall.



### WALL-MOUNTED WATER CLOSETS

X=52" MINIMUM WHEN WATER CLOSETS ARE IN STALLS
X=54" MINIMUM WHEN WATER CLOSETS ARE NOT IN STALLS
(SUCH AS IN SINGLE ACCOMMODATION ROOMS OR
OPEN TOILETING SITUATIONS)



### FLOOR-MOUNTED WATER CLOSETS

### GRAB BAR DIMENSIONS

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

25

FINDINGS OF INVESTIGATION
Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
Since there are no grab bars mounted in the restroom, they are in violation.

**DAOLIAM INTERNATIONAL**

\*      AREA OF CONCERN
        Are the side-grab bars forward ends extended to a minimum of 54 inches from the back wall?

(ADA 4.17.3) (CA T24 1115B.4.1.3.3.1)
        The side-grab bar shall extend to a minimum of 54 inches from the back wall.



**WALL-MOUNTED WATER CLOSETS**

**FLOOR-MOUNTED WATER CLOSETS**

**GRAB BAR DIMENSIONS**

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

27

DAOLIAM INTERNATIONAL

FINDINGS OF INVESTIGATION
Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
Since there are no grab bars mounted in the restroom, they are in violation.

DAOLIAM INTERNATIONAL

\*     AREA OF CONCERN
       Does the side grab bar extend to at least 24 inches past the water closet?

    (ADA 4.17.3) (CA T24 1115B.4.1.3.3.1) (Side Grab Bar extends 24" past water closet)
       Side grab bar extends a minimum of 24 inches beyond the front of the water
closet.



## WALL-MOUNTED WATER CLOSETS

X=52" MINIMUM WHEN WATER CLOSETS ARE IN STALLS
X=54" MINIMUM WHEN WATER CLOSETS ARE NOT IN STALLS
(SUCH AS IN SINGLE ACCOMMODATION ROOMS OR
OPEN TOILETING SITUATIONS)



## FLOOR-MOUNTED WATER CLOSETS



## GRAB BAR DIMENSIONS

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

29

DAOLIAM INTERNATIONAL

FINDINGS OF INVESTIGATION
Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
Since there are no grab bars mounted in the restroom, they are in violation.

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
         Is the rear grab bar long enough?

(ADA 4.17.3) (CA T24 1115B.4.1.3.3.2) (Length of Rear Grab Bar)
         Rear Grab Bar is a minimum 36 inches long.



**WALL-MOUNTED WATER CLOSETS**

X=52" MINIMUM WHEN WATER CLOSETS ARE IN STALLS
X=54" MINIMUM WHEN WATER CLOSETS ARE NOT IN STALLS
(SUCH AS IN SINGLE ACCOMMODATION ROOMS OR
OPEN TOILETING SITUATIONS)



**FLOOR-MOUNTED WATER CLOSETS**



**GRAB BAR DIMENSIONS**

**DAOLIAM INTERNATIONAL**

FINDINGS OF INVESTIGATION
    Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
    Since there are no grab bars mounted in the restroom, they are in violation.

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
       Is the rear grab bar attached within 6 inches of the corner of the wall on the toilet side?
       (ADA 4.17.3) (CA T24 1115B.4.1.3.3.1) (Attached within 6 inches)
       Rear Grab Bar is attached a maximum of 6 inches from the corner of the wall on the toilet side.



**SIDE VIEW**          **FRONT VIEW**

## WALL-MOUNTED WATER CLOSETS

X=52" MINIMUM WHEN WATER CLOSETS ARE IN STALLS
X=54" MINIMUM WHEN WATER CLOSETS ARE NOT IN STALLS
(SUCH AS IN SINGLE ACCOMMODATION ROOMS OR
OPEN TOILETING SITUATIONS)



**SIDE VIEW**          **FRONT VIEW**

## FLOOR-MOUNTED WATER CLOSETS

## GRAB BAR DIMENSIONS

**AMERICANS WITH DISABILITIES ACT (ADA)**          33
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

DAOLIAM INTERNATIONAL

FINDINGS OF INVESTIGATION
Here, there are no grab bars mounted in the restroom.

CONCLUSION – VIOLATION
Since there are no grab bars mounted in the restroom, they are in violation.

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
Should drain and hot water piping be covered?

ADAAG 4.24.6 & CA T24 1117B.9.2  Exposed Pipes and Surfaces
Hot water and drain pipes exposed under sinks shall be insulated or otherwise configured so as to protect against contact.  There shall be no sharp or abrasive surfaces under sinks.

FINDINGS OF INVESTIGATION
Here, the hot water and drain pipes are exposed and they are not insulated or otherwise configured so as to protect against contact.

CONCLUSION – VIOLATION
Since the hot water and drain pipes are exposed and they are not insulated or otherwise configured so as to protect against contact, they are in violation.

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
         Are knobs permitted to be on accessible restroom entry doors?

ADAAG 4.13.9 & ca title 24 1133B.2.5.1 Opening Hardware on Doors
         Latching and locking doors that are hand operated are operable with a single effort (ie. Lever-type, Panic Bars or Push-Pull Type).

FINDINGS OF INVESTIGATION
         Here, there are knobs on the restroom entry doors, which require specific grasping and twisting of the wrist to operate.

CONCLUSION – VIOLATION
         Since, there are knobs on the restroom entry doors, which require specific grasping and twisting of the wrist to operate, they are in violation.

D.     ANY OTHER MEASURES NECESSARY

D(1)  PUBLIC TELEPHONES & WATER FOUNTAINS

      N/A

D(2).  HAZARDS & EMERGENCY PROCEDURES

      N/A

D(3)   CONTROLS & OPERATING MECHANISMS, VENDING MACHINES, AUTOMATED TELLER MACHINES AND POINT OF SALE MACHINES

      N/A

D(4).  ELEVATORS

      N/A

DAOLIAM INTERNATIONAL

VII.   PRIOR HISTORY OF ADA COMPLAINTS/LITIGATION

   None


VIII.   LIST OF BUSINESSES IN NON-COMPLIANCE

   The following business/tenants are located within facility surveyed and therefore in non-compliance with respect to the AMERICAN DISABILITY ACT, ADA ACCESSIBLE GUIDELINES:

ADAAG SURVEY OF:        ACE FURNITURE
                       3672 EL CAON BLVD
                       SAN DIEGO, CA 92104

# EXHIBIT "B"

8/11/2017

ACE FURNITURE
3672 EL CAON BLVD
SAN DIEGO, CA 92104


RE: Notice of Intent To File Lawsuit

Dear Business Owner:

I have visited your business and it is in violation of the Americans with
Disabilities Act.

I am in a wheelchair.  The restroom has a step at the entrance.  The restroom
door is too narrow.

There are no grab bars around the toilet.  Please add a rear and side grab bar.

If I do not hear from you within 30 days of today's date, in writing, I may
file a lawsuit against your facility.

Sincerely,

**ROY MASON**
4751 CASTANA ST
SAN DIEGO, CA, 92102